### LUDVIGH v. AMERICAN WOOLEN CO. et al.

#### (District Court, S. D. New York. December 6, 1907.)

BANKRUPTCY—SUIT BY TRUSTEE TO RECOVER PROPERTY—SUFFICIENCY OF BILL.

A trustee in bankruptcy filed a bill against the American Woolen Company and the Niagara Woolen Company, corporations, alleging that the bankrupts were wholesale dealers in silks and woolens, and bought the latter on credit from the American Company and others; that, pursuant to a fraudulent arrangement between them, the Niagara Company was organized as a selling agent for the American Company. practically all of its stock being issued to the bankrupts, and pledged by them to the American Company as a guaranty of the performance of its contract as agent; that the office and warehouse of the Niagara Company were in the bankrupts' place of business, and they controlled its operations, received the goods consigned to it by the American Company, mingled the same with their own goods, made the sales, and collected the proceeds which they deposited to their own account, making remittances for credit to the company; that, immediately preceding the bankruptcy, defendants took possession of and removed all consigned goods remaining in the bankrupts' stock. *Held*, that the bill stated a cause of action to recover the value of such goods, on the ground that the transactions set out were fraudulent as against other creditors, and that such goods were in the possession of the bankrupts under such circumstances as to estop defendants from asserting ownership as against complainant.

In Equity. On demurrer to bill.

The object of the bill was to recover money alleged to have been paid by the bankrupts to the defendant American Woolen Company and the value of woolens taken away by the American Woolen Company from the bankrupts' possession immediately prior to the filing of the petition. Both of the defendants were corporations organized under the laws of New York, and the complainant is the trustee in bankruptcy of Philip Horowitz & Son. The bill alleged that prior to October 26, 1904, Philip Horowitz & Son were doing business in silks and woolens in New York City. They purchased their goods from a number of different concerns on credit in the usual course of business, and continually possessed at their place of business a large stock of silks and woolens. In 1901 the American Woolen Company, upon its incorporation in that year, took over the business of a number of concerns which had previously supplied the bankrupts on credit, and commenced selling woolens to the bankrupts in the same manner, allowing them a line of credit of about $40,000. The bankrupts also continued purchasing woolens from the other concerns which had not transferred their business to the American Woolen Company, and thus kept up their stock in part from this source. They also continued their silk business on varying terms of credit as before. The American Woolen Company refused the bankrupts further credit about November 1, 1902, and the

bill then alleges the making of a fraudulent arrangement by the American Woolen Company and the bankrupts, pursuant to which the Niagara Woolen Company on November 11, 1902, was incorporated with an authorized capitalization of $20,000. The bill alleges the various steps in the organization of the Niagara Woolen Company, the result of which was that the bankrupt Philip Horowitz acquired all but two of the shares of the stock of the Niagara Woolen Company, the remaining two being held by employés of the American Woolen Company. A contract was then made between the American Woolen Company and the Niagara Woolen Company under which the latter agreed to act as the agent for the sale of woolens to be consigned to it by the American Woolen Company. Philip Horowitz guaranteed the performance by the Niagara Woolen Company of this contract, and hypothecated his stock in the Niagara Woolen Company as security for this guarantee. The contract stipulated that title to the goods consigned should in all cases remain in the American Woolen Company, but that the Niagara Woolen Company could sell the goods to such persons as it might elect for credit or cash, and remit the proceeds to the American Woolen Company, less the amount which would represent the profit which would have been derived had the goods been purchased direct from the American Woolen Company. The bankrupts were allowed to receive the dividends on the stock of the Niagara Woolen Company until default on the guarantee. The name of the Niagara Woolen Company was put up adjacent to the bankrupts' name over their place of business, and a space was partitioned off in the bankrupts' office for the Niagara Woolen Company. A separate set of books was opened as the books of the Niagara Woolen Company, and kept by an employé of the American Woolen Company. With each delivery of goods under this contract a writing would be also delivered to the effect that the goods were the property of the American Woolen Company, and were consigned to the Niagara Woolen Company for the purposes of sale. All of these facts were unknown to the public. The goods delivered were mingled with the other woolens of the bankrupts and with their stock of silk goods, the Niagara Woolen Company employing no salesmen, and no effort being made by any one to build up a good will for it. The proceeds of sales were generally treated by the bankrupts, with the defendants' acquiescence, as their own. These proceeds would be deposited in the bankrupts' own bank account, and remittances be made to the credit of the Niagara Woolen Company on the general account of the American Woolen Company. The bill alleges that, induced by the ostensible ownership of the goods by the bankrupts, the latter's creditors, represented by the complainant, extended credit to the bankrupts, and that they accordingly are entitled to the stock of woolens thus consigned remaining on hand at the time of the failure, together with money representing collections from sales made by them. The bill alleges that these goods were taken away from the bankrupts' place of business by the American Woolen Company on October 26, 1904, immediately prior to the filing of the petition.

Abram I. Elkus and Garrard Glenn, for complainant.
Daniel P. Hays, for defendants.

HOUGH, District Judge (after stating the facts as above). The draughtsman of the bill has evidently felt that the exact situation presented to him for description was new, and different views of the pleading might be taken by men of equal experience. To my mind the question presented is this: Assuming it to be true, as asserted, that the Niagara Woolen Company, though a different legal entity, was for business purposes but the alter ego of the American Woolen Company; that goods consigned to the Niagara Woolen Company were while in that company's possession intended to be held for the benefit of the American Woolen Company; that the affairs of the Niagara Woolen Company were by the procurement and consent of the American Woolen Company managed in large part by the bankrupt; that, being so

managed, the Niagara Woolen Company permitted the bankrupts to trade and use the consigned stock of goods as their own to this extent, viz., to sell the same to customers of their finding or selection, to sell in the bankrupts' own name, and to make collections likewise in their own name and deposit the proceeds of collection in whole or in great part to bankrupts' own credit—do these allegations, if true, set forth a cause of action in the trustee duly appointed, based upon an alleged scheme to hinder, delay, and defraud creditors? The answer to this question is to be found in my judgment by solving one or two questions of fact, to wit: (a) Were the goods in question at the time of the transaction complained of the goods of the bankrupts? (b) If they were not as between the parties to the agreement the goods of the bankrupts, were they in the possession of the bankrupts under such circumstances as to estop the American Woolen Company and the Niagara Woolen Company from asserting ownership therein as against a trustee in bankruptcy?

I think both of these questions are raised by the bill of complaint upon sufficient allegations of fact pleaded with sufficient artificiality. If this were a final hearing, and all the facts were admitted as pleaded, my answer to the question last propounded would be to direct judgment for complainant. Entertaining such view, the demurrer is overruled.